WILLIAM T. RYERSON *et al.* Respondents, *against* BENJAMIN J. WILLIS, Appellant.

(Decided February 3d, 1879.)

Where there is a claim of title adverse to the vendor, and such claim is known to the vendor and to the vendee, and the latter takes from the former a deed with covenant of title, and agrees with him that he shall receive, as part of the purchase money, a mortgage which shall not be collectible until he shall obtain for the vendee a release or quitclaim deed from the party holding the adverse claim, which release or quitclaim deed the vendor agrees to obtain and give the vendee within a specified time, the latter cannot, after the expiration of that time, maintain an equitable action for the cancellation of the mortgage simply on the ground that the vendor has not obtained either the release or the quitclaim deed, no fraud, accident or mistake being shown, and no offer to rescind the contract being made.

Such a mortgage is not a cloud on the title.

The remedy of the vendee, in such a case, is an action for damages on the warranty contained in his deed.

APPEAL from a judgment of this court in favor of plaintiff, entered on the decision of a judge at trial term.

The facts are stated in the opinion.

*William Settle*, for appellant.

*Joseph O. Brown*, for respondents.

VAN HOESEN, J.—Unfortunately the learned judge who tried this cause at special term did not state, either in writing or orally, his reasons for directing the mortgage to be canceled; and, on looking over the findings of fact, I do not discover any grounds which seem to me to warrant the judgment. It appears that in the year 1873 the plaintiffs bought of the defendant some lots at Harlem for the sum of eight thousand dollars. The contract provided that the plaintiffs should pay five hundred dollars when the parties signed it, and four thousand dollars when the deed was de-

livered. The rest of the purchase money was, according to the contract, to be secured by a mortgage for three thousand five hundred dollars, payable three years after the deed was delivered, and bearing interest, which was to be paid semi-annually. May 25th, 1873, was the day fixed for the pay-ment of the four thousand dollars, for the delivery of the deed, and for the delivery of the mortgage.

The title of the defendant to the lots in question was doubted by the plaintiffs, and a matter of discussion between them and the defendant. The city of New York asserted a claim, which was believed by many to be valid and indis-putable, to these very lots; and, therefore, the plaintiffs and the defendant inserted in their contract the following article:

"And it is further agreed, that the party of the first part shall also deliver to the parties of the second part a quit-claim deed or release from the mayor, aldermen and com-monalty of the city of New York, of said lots; and if said quitclaim or release cannot be then (at the delivery of the warranty deed) obtained, the said party of the first part shall execute and deliver to parties of the second part his bond of indemnity to insure the delivery of said quitclaim or release deed on or before the 25th day of May, 1875. Nothing in this clause contained is intended to weaken or diminish the re-sponsibility of said Willis under his warranty deed, and under other clauses of this contract, and the mortgage here-in provided is also to remain as security for the delivery of said quitclaim deed or release, and is not to be collectible, either principal or interest, until the delivery of said quit-claim deed."

The defendant has never yet succeeded in obtaining from the city its release or quitclaim of these lots. It will be seen that the expectation was that the defendant would deliver the quitclaim to the plaintiff on or before May 25, 1875. On the 3d of August, 1876, this action was begun. The relief prayed for was that the mortgage should be canceled and discharged of record, and no claim was made for damages for a breach of the covenants contained in the defendant's deed.

There was no fraud, accident or mistake in the case; and I can discover no ground for the action of a Court of Chancery unless it appear that the plaintiffs have a lien upon the mortgage, which the failure to procure the quitclaim gave them a right to foreclose, or unless it appear that the mortgage is a cloud upon their title, which ought to be removed.

A cloud upon the title it certainly is not. The bond and mortgage are not negotiable, and the agreement which I have just quoted will always be a conclusive answer to any attempt to collect them before the defendant has delivered to the plaintiffs the quitclaim from the city. Nor do I see how the plaintiffs have a right to foreclose the defendant from his title to the mortgage. The phrase that the mortgage shall remain as a security for the delivery of the quitclaim, and not to be collectible until the delivery of the quitclaim, was not, in my opinion, intended to work a forfeiture of the mortgage if the defendant failed to obtain the quitclaim by the specified time. Time is not of the essence of the contract, and the only effect of failure to produce the quitclaim is to suspend the payment of the mortgage meanwhile.

The purchase price of the lots was eight thousand dollars. Three thousand five hundred dollars of that amount cannot be collected until the quitclaim of the city has been placed by the defendant in the plaintiffs' hands. But though the payment of $3500 be postponed or suspended, I do not perceive wherein the right lies to deprive the defendant of it entirely.

If a mortgage be placed in escrow till a certain event shall happen, may the court discharge the mortgagor from the payment of the mortgage if a delay occur?

The parties to the agreement certainly did not contemplate such a result. They said in substance that four thousand five hundred dollars was all that the lots were worth whilst the city kept on asserting its title, and that they would be worth three thousand five hundred dollars more whenever the city abandoned its claim. Until the city, therefore, gave its quitclaim, the defendant was not to receive any

more than what the plaintiffs believed the lots to be worth, subject to the city's claim.   It is true that the defendant believed, and agreed, that he would obtain that quitclaim within two years·from the time that he gave his deed, but he has been disappointed.   The consequence is, that he is not entitled to collect, and that the plaintiffs are not liable to pay the mortgage, either principal or interest.   It is said that the plaintiffs ought not to have this mortgage hanging over them forever, and that some limit ought to be placed upon the defendant's time to furnish the quitclaim.   There is some force in this, but there is as much force in the fact that the plaintiffs, with their eyes wide open, bought lots on which they knew the city had a claim, and they also knew that the obtaining of the quitclaim was a delicate, difficult and tedious business, and they made their own contract with that fact plainly in view.

In Sugden on Vendors and Purchasers, the law is said to be :

" Where a purchaser enters into, or proceeds in, a treaty, after he is acquainted with defects in the title, and knows that the vendor's ability to make a good title depends on the defects being cured, he will be held to his bargain, although the time appointed for completing the contract is expired, and considerable further time may be required to make a good title."· (Sugden on Vendors and Purchasers, bottom page 265 ; see also, 5 Wait's Law of Actions and Defences, pp. 521 and 522, citing *Craddock* v. *Shirley*, 3 A. K. Marsh, 288 ; *Breckenridge* v. *Waters*, 5 Monroe, (Ky.) 150 ; 5 Wait's Actions and Defences, p. 781, citing *Love* v. *Cobb*, 63 N. C. 324 ; *Hill* v. *Fiske*, 38 Me. 520 ; *Colyer* v. *Clay*, 7 Beav. 189 ; *Lawrenson* v. *Butler*, 1 Sch. & Lef. 13 ; 2 Kent's Comm. marg. pp. 471–472.)

They do not ask to rescind the whole contract.   They purpose holding on to the lots.   But to get rid of the mortgage I think it would be inequitable to allow them to do this. They must stand by their contract as a whole, and not avail themselves of the part which is beneficial whilst they repudiate that which is burdensome.   They may resort to their ac-

tion on the covenants of their deed if they desire to. That is their remedy, and their only remedy. (*Refeld* v. *Wood-folk*, 22 How. [U. S.] 318; 2 Kent's Comm. marg. pp. 471–472.)

The judgment should be reversed, a new trial ordered, with costs to abide. event.

JOSEPH F. DALY and LARREMORE, JJ., concurred.*

* Affirmed by the Court of Appeals.